## HICKS *v.* SMITH.

1. VENDOR AND PURCHASER—SPECIFIC PERFORMANCE—GOOD TITLE.

   Where complainant filed a bill for specific performance of a land contract that contained a proviso requiring the defendant within one year to procure a marketable title by perfecting his tax interest, and it appeared that defendant had endeavored to clear up defects in his title, but had been unable to do so in the time limited, and later tendered back to complainant the amount which had been paid, and where the latter declined to receive the money, but notified him to proceed as quickly as possible to carry out the agreement, and it appeared that defendant had substantially complied with the terms of his contract, and the alleged defects remaining outstanding were trivial and insufficient as a ground of complaint, as that defendant had failed to serve notice on a second mortgagee, in one instance, the prior incumbrance having been foreclosed, so as to cut off the junior lien, the bill could not be maintained and complainant's position and contention was inequitable.

2. COSTS—APPEAL AND ERROR.

Where complainant, in a suit to compel the specific enforcement of a land contract, had ground to complain, which was remedied by the decree of the trial court and costs awarded to him, and, on appeal, the decree requiring him to accept a warranty deed and to pay the balance due was affirmed, the costs on appeal should be paid by complainant, both parties joining in the appeal.

Appeal from Allegan; Cross, J. Submitted June 17, 1914. (Docket No. 95.) Decided October 3, 1914.

Bill by Eri G. Hicks against Joseph Smith and Fidus E. Fish for specific performance of a land contract, and to enjoin summary proceedings for possession of the premises. From a decree for defendants, but awarding costs to complainant, both parties appeal. Affirmed, with costs of appeal to defendants.

*Ira Montague* (*Charles Thew*, of counsel), for complainant.

*E. W. Stone* (*C. R. Wilkes*, of counsel), for defendant Smith.

STONE, J. In this cause the bill of complaint was filed July 31, 1912, for specific performance of a land contract bearing date April 25, 1908, by the terms of which the defendant agreed to sell and convey to complainant three parcels of land consisting of 320 acres in Allegan county, and therein described, for $960, to be paid as follows: $100 on delivery of contract; $400 18 months from the date thereof, and $460 30 months from date. It is undisputed that defendant's interest in the land in question consisted of certain tax title claims, and that the notices required by law to be given to perfect title and the right to possession had not been given, at the time of entering into the contract, and that this fact was known to both parties. The contract was in the usual form

in use in this State, and provided that the defendant, on receiving such payments at the time mentioned, should execute and deliver to the complainant, or his assigns, a good and sufficient conveyance, in fee simple, of said described lands, free from all liens and incumbrances. It gave the complainant the possession of the premises on delivery of the contract, and in case he failed to perform the contract, there was the right given to the defendant to declare the same void, and to remove complainant from the premises. The contract, however, contained the following written provision:

"This contract is given with the understanding and agreement between parties of the first and second part that, if party of the first part shall fail to procure title to the above land within one year from this date, after using every effort possible to secure same, all money paid on this contract is to be returned to second party, and this contract to become null and void."

Only the first installment of $100 has ever been paid on the contract by complainant. No steps seem to have been taken to perfect title, by defendant, until early in the year 1910, when certain claimed statutory notices were given under defendant's tax deeds. After this effort was made and after expiration of the time limited for payment, defendant tendered to complainant a warranty deed duly executed of the lands, and demanded payment of the amount due on the contract, or that he surrender the possession of the land, and the $100 paid was tendered in case complainant so elected. Defendant had in the meantime employed attorneys to give the requisite tax notices, and complainant had also employed counsel to look after his interest, under the contract. As early as April 5, 1911, complainant's counsel wrote a letter to counsel for defendant, in which he stated that de-

fendant's title to one 80-acre parcel was satisfactory to complainant, the same having then recently been perfected. He then proceeded specifically to point out the claimed defects in the notices given by defendant, and the service thereof, and the defects in defendant's title which he claimed still existed. Thereupon defendant's attorney proceeded to serve new notices, and to perfect title of defendant in the premises, to meet the objections of complainant's attorney; and it is the claim of defendant that through and by these later proceedings the title of defendant was perfected, and that complainant should have accepted the title. Complainant refusing to accept the title again offered, and refusing to accept the $100 paid, and surrender possession, the defendant served notice of forfeiture of the contract, and commenced summary proceedings before defendant Fish, a circuit court commissioner of the county, to obtain the possession of the premises. At this stage in the history of the controversy, the bill of complaint in the instant case was filed. The bill, among other things, states that the defendant Smith has neither secured the title to said premises, nor made any effort so to do; that he is not the owner of the premises, and is not entitled to the possession thereof, and cannot convey to complainant a title in fee simple, free and clear from all liens and incumbrances. Complainant alleges that he was then, and at all times had been, ready and willing to pay the balance due on said contract upon the delivery of a merchantable title. He prays that the contract may be specifically performed and carried into execution, and that in case defendant Smith fails to secure the title to said premises, complainant be authorized to secure such title, and be authorized to deduct the costs and charges of securing such title from the balance due on the contract.

The defendant Smith answered the bill, alleging

that soon after the contract was executed effort was made on his part to perfect the title as required by the terms thereof; that it had proved more of a task than he had anticipated; that after the lapse of 18 months, the title had not been perfected, and he then told the complainant that he was willing to pay back the $100 and forfeit said contract, but that complainant then told defendant to proceed under the contract, and secure the title as soon as he reasonably could, in accordance with which understanding he did proceed in the clearing of said title in the manner thereinafter stated; that the condition of the title was well known to both parties at the time the contract was executed, and the clause quoted was inserted for that reason. The answer then proceeds at great length to set out the tax title interest which defendant had in the premises, and the steps taken by him and his counsel to perfect the title thereto. He asserts that he had complied with the terms of said contract and had secured title in fee simple to said premises, free and clear of all liens and incumbrances, and had on, to wit, May 22, 1912, tendered to complainant a warranty deed, signed and duly executed by himself and wife, of said premises, and had demanded of said complainant, as the sole and only condition upon which the same would be delivered, that he, complainant, comply with the conditions of said contract, and pay the remainder of the principal due, together with interest thereon as provided in said contract; that complainant then and there refused to accept said deed, or pay said balance due, whereupon defendant did tender to the complainant the sum of $100, being the full sum he had paid on said land contract, which was refused, and thereafter said contract was declared to be forfeited by defendant and notice of such forfeiture was duly served, and the summary proceeding begun. Defendant prays the benefit of a cross-bill, and that com-

plainant come to an account with him as to the amount
due him on such contract; that the defendant be de-
creed to have complied with the terms of said con-
tract, in that he has used every effort possible to se-
cure the title to said premises, and that the title of
defendant to said premises, subject to said contract,
be decreed to be an absolute title in fee simple.   In
his answer to the cross-bill complainant admits that
defendant had title to one 80-acre parcel of said land
only.   He denies that any legal notice had been or
could be served upon all persons entitled to notice,
after said defendant had sold said premises to com-
plainant.   Upon the hearing and in his brief and argu-
ment in this court complainant's counsel took the posi-
tion that as to one-half of the land in question the
title rests in the government of the United States, and
therefore that all taxes attempted to be levied, and
the tax deeds issued in pursuance thereof, are abso-
lutely void.   The testimony was taken before the
court, as in a suit at law, and the court found that
defendant had perfected his title to said lands, and
was then the owner thereof, and was in a position to
perform his part of said contract, and decreed that
complainant should, within 30 days, accept a war-
ranty deed of said premises, properly executed by the
defendant and wife, and pay to the defendant the bal-
ance due as provided in said contract; that in default
thereof complainant should surrender possession of
said premises to the defendant upon the latter return-
ing to him the $100 paid by complainant upon said
contract.   The trial court, being of opinion that com-
plainant was compelled to file his bill of complaint, to
require the defendant to perfect the title to said lands,
awarded costs to complainant.   Both parties have ap-
pealed, the complainant generally, and the defendant
from that part of the decree awarding costs to com-
plainant.

The complainant has by his pleadings and argument taken an anomalous and contradictory position in the case. He prays for a specific performance of the contract, yet he says that defendant cannot perform it, because he cannot give the notices required to perfect title, since he has sold the land to complainant, and he further asserts that the title to one-half of the land is in the government of the United States. If defendant is not able to perform, surely the complainant should accept the $100 paid by him and declare the contract at an end. If the court had jurisdiction to decree damages to complainant, he has not offered evidence of damages upon which a decree could be based.

Complainant's position in the case does not appeal to a court of equity. When complaining of defects in defendant's title, complainant was asked to go on and perfect it himself, and a court of equity would have reimbursed him for so doing, yet he refused so to do. He refuses either to accept the title offered, or to yield up possession of the premises and accept the $100 paid by him. After a careful reading of the record, we are of opinion that the trial court reached the correct conclusion in holding that the defendant had complied with his contract, by perfecting the title to the lands and is now the owner thereof, and is in position to convey a good title to complainant. Many of the objections of the complainant are purely technical and are without merit. For instance, in the chain of one of the titles, it appeared that there was a mortgage to one Bert Walters and W. J. Ostrander, bearing date July 30, 1901. It is objected that no notice was served on these mortgagees. Yet it appeared by the same chain of title that an earlier mortgage, bearing date March 25, 1889, given by the same mortgagor to another party, had been foreclosed, and a sheriff's deed given, thus cutting off the later mortgage. There

was no evidence in the case that this Walters and Ostrander mortgage was in force, or that anything was claimed for it.

It was further objected that notice should be served on complainant, because he was in possession. When service was made on complainant, in the second attempt to perfect title, then complainant objected that defendant could not give any notice at all because he had sold the land to complainant. We consider these objections purely trivial. We are of the opinion that the decree of the lower court should be affirmed. The only doubt we have had is whether the court should have awarded costs to complainant.

Upon the first taking of testimony it appeared that school district No. 1 of Pineplains township had a lease of one-half acre of the land "so long as used for school purposes," and that one Wayne Andrews, a minor, had not been served, or brought in. These defects were later cured, but seem to have been the reason for awarding costs to complainant. We are not disposed to disturb the decree upon the question of costs. Thirty days' additional time should be given, from the date of decree, for performance.

The decree of the circuit court will stand affirmed, with costs of this court to defendant.

McALVAY, C. J., and BROOKE, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.